**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.

**ADAM WAYNE PURVIS,**

    **Defendant.**

**Case No. 17-40111-01-DDC**

**MEMORANDUM AND ORDER**

This matter comes before the court on prisoner Adam Wayne Purvis's Emergency Motion for Release Pending Appeal (Doc. 90). Mr. Purvis currently is incarcerated in Federal Correctional Institute ("FCI") Forrest City, Arkansas. Mr. Purvis seeks immediate release to home confinement in his mother's house in Topeka, Kansas because of the COVID-19 pandemic. The government has responded (Doc. 92) and Mr. Purvis has filed a Reply (Doc. 93). Mr. Purvis explicitly waived any right he had to a hearing on this motion. Doc. 90 at 1. For reasons explained below, the court denies Mr. Purvis's motion.

**I.    Background**

On November 15, 2017, a grand jury returned a one-count Indictment charging Mr. Purvis with possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(b)(1)(A), 21 U.S.C. § 846, and 18 U.S.C. § 2. Doc. 1 at 1–2. On May 29, 2018, without a plea agreement, Mr. Purvis pleaded guilty to Count 1, the sole count in the Indictment. Doc. 28. Mr. Purvis faced a minimum term of imprisonment of 10 years and a maximum term of life imprisonment. *See* Doc. 37 at 30 (Presentence Investigation Report ¶ 119). The Presentence Investigation Report ("PSR")—which Mr. Purvis never objected to in

any respect—calculated a base offense level of 33 and a criminal history category of IV. *Id.* at 30 (PSR ¶ 120). These two uncontested findings produced a Guidelines sentencing range of 188 to 235 months' imprisonment. *Id.*

The court held a sentencing hearing on December 17, 2018. Doc. 60. Mr. Purvis sought a variance, requesting a 48-month sentence. Doc. 87 at 7–8 (Tr. Sentencing Hr'g Dec. 17, 2018 7:24–8:4). A 48-month sentence would have represented a 140-month reduction—almost 75%—below the bottom end of the Guidelines range. The court, on the government's motion, departed well below the Guidelines range. It sentenced Mr. Purvis to 142 months' imprisonment—a 46-month departure—some 25% lower than the bottom end of the Guidelines range. Doc. 62.

On January 3, 2019, Mr. Purvis filed his notice of appeal (Doc. 64). On appeal, Mr. Purvis challenged the court's decision denying his motion for a variance based on a policy disagreement with the methamphetamine ratios in the drug guidelines. *See* Doc. 90 at 7. He asserts in his appeal that the court "failed to appreciate its discretion to vary from the guidelines range based on a disagreement with the methamphetamine guideline." *Id.*

Mr. Purvis now seeks immediate release pending his appeal. He has informed his mother, Patricia Purvis, that he was exposed to COVID-19 through his former cellmate, who, he told her, has tested positive for COVID-19. Doc. 90 at 2–3. Mr. Purvis asserts that his health problems and obesity place him at greater risk of severe illness if he contracts the virus. Doc. 93 at 2. On April 9, 2020, the Bureau of Prisons ("BOP") reported that 20 inmates at Forrest City Low—Mr. Purvis's facility—have tested positive for the virus. Doc. 93-1 at 1. The government reports that Mr. Purvis has not tested positive for COVID-19. Doc. 90 at 10. The government also asserts that BOP has screened him for eligibility for direct home confinement, and he did

not qualify for release to home confinement. *Id.* Mr. Purvis then filed the current motion. He proposes home confinement in his mother's home in Topeka, Kansas, because he is at "extraordinary risk" if he contracts the virus. Doc. 90 at 1. He asserts that the court should release him under 18 U.S.C. § 3143 and § 3145. The court considers Mr. Purvis's arguments, in turn, below.

## I. Release Pending Appeal under 18 U.S.C. § 3143(b)

Mr. Purvis first asserts he is entitled to release pending appeal under 18 U.S.C. § 3143(b)(1). This statute mandates detention pending appeal unless the court finds that (A) the person is not a flight risk or a danger to the safety of any other person in the community if released, and (B) the appeal is not for the purpose of delay, raises a substantial question of law or fact, and that if the substantial question is decided favorably to defendant on appeal, that decision is likely to result in (i) "reversal," (ii) "an order for a new trial," (iii) "a sentence that does not include a term of imprisonment," or (iv) "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(A)–(B).

The government asserts that Mr. Purvis's reliance on § 3143(b)(1) is misplaced. Doc. 92 at 11. The court agrees with the government on this point. Title 18 U.S.C § 3143(b)(1) explicitly provides that it applies, "[e]xcept as provided in paragraph (2) . . . ." Paragraph (2)—18 U.S.C § 3143(b)(2)—provides the court "shall order that a person who has been found guilty of an offense in a case described in [§ 3142(f)(1)(C)] and sentenced to a term of imprisonment, and who has filed an appeal . . . be detained." Section 3143(b)(2) applies to Mr. Purvis. He pleaded guilty to violating 21 U.S.C. § 841(a)(1). Title 21 U.S.C. § 841(b)(1)(A) provides the penalty provision for this offense, requiring a minimum term of 10 years' imprisonment, and a

3

maximum term of life imprisonment. Violations of § 841(a)(1) are violations of the "Controlled Substances Act" under 18 U.S.C. § 3142(f)(1)(C).[1] Consequently, § 3143(b)(2) applies to Mr. Purvis's conviction and, with one exception, it mandates his detention pending appeal.

## II.     Release for "Exceptional Circumstances" under 18 U.S.C. § 3145(c)

As explained in Section I, § 3143(b)(2) mandates Mr. Purvis's detention pending appeal. But he still has access to an avenue for release under 18 U.S.C. § 3145(c). This provision—the "exceptional circumstances exception"—provides, in pertinent part, that a person subject to mandatory detention under 18 U.S.C. § 3143(b)(2) and who meets the conditions of release set forth in § 3143(b)(1), "may be ordered released, under appropriate conditions . . . if it is clearly shown that there are exceptional reasons why such a person's detention would not be appropriate." 18 U.S.C. § 3145(c). To qualify for release under this analysis, Mr. Purvis must satisfy both the requirements of § 3143(b)(1) and the "exceptional circumstances" requirement of § 3145(c). The court first evaluates the § 3143(b)(1) prong of this standard, and then turns to the exceptional circumstances requirement in § 3145(c).

### A. The First Prong: The § 3143(b)(1) Requirements

As referenced above, 18 U.S.C. § 3143(b)(1) mandates Mr. Purvis's detention pending appeal unless he proves, by clear and convincing evidence, that (A) he is "not likely to flee or pose a danger to the safety of any other person or the community," and (B) his appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in (i)

---

[1]     Title 18 U.S.C. § 3142(f)(1)(C) provides that, on the government's motion, the court shall hold a hearing to determine whether any "condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community" for "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et seq.*) . . . ." *See also United States v. Velarde*, 555 F. App'x 840, 840 (10th Cir. 2014) (explaining that defendant's drug offense required a mandatory sentence of ten years to life imprisonment, triggering application of § 3142(f)(1)(C) and § 3143).

"reversal," (ii) "an order for a new trial," (iii) "a sentence that does not include a term of imprisonment," or (iv) "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." The court considers these factors, in turn, below.

### 1. Flight Risk or Danger to the Community

First, Mr. Purvis must show by clear and convincing evidence that he poses no danger to the safety of any other person or the community if released. 18 U.S.C. § 3143(b)(1)(A). Mr. Purvis asserts that he never has been found to be a flight risk or a danger to the community. Doc. 90 at 6. His pretrial release violation was his drug use and it, he asserts, posed no danger to others. *Id.*

Mr. Purvis's release plan calls for his mother, Patricia Purvis, to transport him from FCI Forrest City to her home in Topeka, Kansas, where he would remain confined. *Id.* at 18. He has a separate room in her home where he reports he would quarantine, if necessary. *Id.* For several reasons, this release plan falls short of "clear and convincing evidence" that Mr. Purvis poses no danger to the safety of any other person or the community if released. 18 U.S.C. § 3143(b)(1)(A).

The conduct underlying Mr. Purvis's conviction was methamphetamine trafficking and Mr. Purvis trafficked methamphetamine from his mother's home in Topeka during 2017. Doc. 37 at 5 (PSR ¶ 13); Doc. 90 at 18. Officers arrested him in his mother's home with 27 grams of methamphetamine and some $57,000 in his possession. *Id.* at 6, 26 (PSR ¶¶ 16–19, 95). The PSR conservatively concluded—without objection—that Mr. Purvis had sold 4.36 kilograms of methamphetamine over a four-month period in 2017. *Id.* at 7 (PSR ¶ 25). Patricia Purvis, his mother, has admitted that she used methamphetamine and knew that her son was distributing the

drug before his arrest. *Id.* at 7 (PSR ¶ 23). Indeed, Mr. Purvis conducted drug transactions in her home, and he supplied her with methamphetamine.[2] *Id.* at 7 (PSR ¶ 22). Mr. Purvis never establishes that his mother's methamphetamine use has ceased since his incarceration began. He only asserts, vaguely, that "her focus is currently on Mr. Purvis's health and well-being." Doc. 90 at 18.

Mr. Purvis also admitted to using marijuana and methamphetamine while on pretrial release, and later tested positive for those substances. *Id.* at 4, 5 (PSR ¶¶ 8, 9). He informed his Pretrial Services Officer that he had arranged for those drugs to be delivered to him at his mother's home. *Id.* at 28–29 (PSR ¶ 112). A bit later, in the last stages of his pretrial release, he provided non-human urine in an attempt to evade the consequences of a drug test. *Id.* at 5 (PSR ¶ 9). He thus has failed to comply with his conditions of release—and tried to avoid detection of his violations—in the past. His release plan also requires contact with his 65-year-old mother, and anyone they may expose—or be exposed to—during her 16-hour roundtrip drive between Topeka, Kansas and Forrest City, Arkansas.

Mr. Purvis's release plan returns him to the same home and same set of circumstances that produced his conviction in the first place. His mother—his proposed guardian during his period of release—historically has influenced Mr. Purvis's criminal behavior. For these reasons,

---

[2] The PSR describes another alarming incident involving Mr. Purvis and his mother. In January 2000, police arrested Ms. Purvis for battery and disorderly conduct stemming from an incident where Mr. Purvis tried to steal an item from a J.C. Penney department store. Doc. 37 at 16 (PSR ¶ 62). When security officers tried to detain Mr. Purvis, he sprayed them with mace. *Id.* Ms. Purvis grabbed a security officer, and Mr. Purvis yelled at her to go to their car and get a gun. *Id.* Ms. Purvis kicked an officer in the shin and ran to the car. *Id.* She shoved an officer as he tried to stop her from entering the car and locked herself in the car until police arrived. *Id.* Though this incident occurred some 20 years ago, it suggests Ms. Purvis historically has failed to deter her son's criminal conduct. Indeed, she has been a recurring participant in it.

6

Mr. Purvis has failed to adduce clear and convincing evidence that he poses no danger to the safety of any other person or the community if released. 18 U.S.C. § 3143(b)(1)(A).

### 2. Substantial Question on Appeal

Second, Title 18 U.S.C. § 3143(b)(1)(B) requires that defendant's appeal was not for the purpose of delay and raises a substantial question of law or fact. A "substantial question" is a "close question or one that very well could be decided the other way." *United States v. Affleck*, 765 F.2d 944, 952 (10th Cir. 1985) (citation and internal quotation marks omitted). On appeal, Mr. Purvis has challenged the court's decision denying his motion for variance based on a policy disagreement with the methamphetamine ratios used in the drug quantity Guideline provision. Doc. 90 at 7. His appeal asserts that the court "failed to appreciate its discretion to vary from the guidelines range" based on this policy disagreement. *Id.* The government disagrees. It asserts that Mr. Purvis has raised no substantial question on appeal. Doc. 92 at 13. According to the government, the record reflects that the court understood it could vary from the Guidelines based on a policy disagreement but decided not to do so in Mr. Purvis's case. Doc. 92 at 13.

The court is not impressed with Mr. Purvis's issue. The court sentenced Mr. Purvis the same day as another defendant convicted of methamphetamine trafficking. The defendant in that other case attacked the drug quantity guidelines for methamphetamine used by the drug quantity Guideline § 2D1.1. *See United States v. Rodriguez-Chavarria*, No. 17-40121, Doc. 27 at 4–14 (arguing that methamphetamine guideline "overstates the seriousness of [defendant's] offense" and asking for a four-level variance "to account for the overly punitive methamphetamine guideline"). As Mr. Purvis's sentencing hearing approached, he adopted these arguments from *Rodriguez-Chavarria*. In lieu of presenting those arguments again, Mr. Purvis appropriately chose to incorporate the arguments and authorities in the *Rodriguez-Chavarria* Sentencing

Memorandum simply by referencing them. Doc. 53 at 1 (Mr. Purvis's "Supplemental Sentencing Memorandum").

The court first addressed these policy-oriented arguments in the *Rodriguez-Chavarria* sentencing hearing. It rejected the arguments for reasons the court explained at length. Case No. 17-40121, Doc. 36 at 11–20 (Tr. of Sentencing Hr'g). When the court sentenced Mr. Purvis later the same day, it offered to restate its rationale for rejecting those same arguments by Mr. Purvis. Doc. 87 at 19–20. His counsel declined to have the court recite its ruling again. *Id.* at 20.

As the court explained, when it evaluated the policy-based attack that Mr. Purvis and the other defendant had made on the methamphetamine quantity Guideline, it considered two opinions in great detail: Judge Browning's analysis in *United States v. Reyes*, 9 F. Supp. 3d 1196 (D.N.M. 2014) and Judge Gleason's analysis in *United States v. Diaz*, No. 11-CR-00821-2, 2013 WL 322243 (E.D.N.Y. Jan. 28, 2013). Both judges carefully had considered a policy-based attack on the methamphetamine quantity levels used by the Guideline § 2D1.1. The two judges reached different conclusions, but both explicitly recognized that the Supreme Court had authorized sentencing judges "to disagree with the Guideline ranges and not give much weight to them in [their] sentencing decisions." *Reyes*, 9 F. Supp. 3d at 1216 n.10; *Diaz*, 2103 WL 322243, at *3 ("Sentencing judges may impose sentences that vary from the applicable Guidelines ranges based on their disagreement with a particular policy reflected in the Guidelines." (first citing *Spears v. United States*, 555 U.S. 261, 263–67 (2009); then citing *United States v. Kimbrough*, 552 U.S. 85, 109–10 (2007)).

In sum, Mr. Purvis's appeal contends that the court just didn't understand the cases it explicitly identified as ones it had considered most carefully. The court appreciated its authority to vary from the guideline quantities—it just chose not to invoke that authority in Mr. Purvis's

case. The court is unpersuaded that his appeal presents a substantial question. But recognizing that the Circuit will have the final say about Mr. Purvis's sentencing challenge, the court declines to decide Mr. Purvis's motion on this basis alone. Its analysis thus continues, considering the other components of § 3143(b)(1)(B).

### 3. Title 18 U.S.C. § 3143(b)(1)(B) Remedies

Even if Mr. Purvis had identified a substantial question on appeal, he has another problem. Title 18 U.S.C. § 3143(b)(1)(B) requires that, if he prevailed on his appeal, the Tenth Circuit likely would grant: (i) "reversal," (ii) "an order for a new trial," (iii) "a sentence that does not include a term of imprisonment," or (iv) "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."

The government asserts that Mr. Purvis's appeal never seeks reversal or a new trial. Doc. 92 at 13–14. This conclusion makes sense because he pleaded guilty. Nor, according to the government, does he provide any basis for the Tenth Circuit to order the court to impose a non-custody sentence. *Id.* Indeed, Mr. Purvis asked the court to impose a 48-month custody sentence. This leaves the final alternative, (iv): "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B)(iv). The government asserts that even if the Circuit vacated his sentence with instructions to impose the 48-months that Mr. Purvis requested, the reduced sentence still would not be "less than the total of the time already served plus the expected duration of the appeal process." Doc. 92 at 14. Thus, the government asserts, the court cannot release Mr. Purvis under § 3143(b)(1).

The court agrees. Even a reduced, 48-month sentence still would not amount to "less than the total of the time already served plus the expected duration of the appeal process." The

court remanded Mr. Purvis to custody on April 24, 2018.  Doc. 23.  So, as of mid-April 2020, he has served almost 24 months of his sentence.  According to the government, the Circuit held oral argument on Mr. Purvis's appeal on March 12, 2020, and the government anticipates—reasonably—that the Circuit will issue a decision by September 12, 2020, six months from the date of the argument.  Doc. 92 at 14.  By then, Mr. Purvis will have served 29 months of his sentence.  The best-case scenario for Mr. Purvis—even if he prevails on appeal—is a 48-month sentence.  A September 2020 decision would leave Mr. Purvis with about 19 months left to serve on a 48-month sentence.

Mr. Purvis responds that should he prevail on appeal, he could satisfy § 3143(b)(1)(B)(iv) because, if he prevails on appeal, he would request a downward variance to time-served with conditions of home incarceration and location monitoring, based on his methamphetamine guidelines policy argument, his health status, and the COVID-19 pandemic.  Doc. 90 at 8.  The court is unpersuaded by this sleight of hand.  Mr. Purvis, in essence, asks the court to decide he has satisfied § 3143(b)(1)(B)(iv) based on a hypothetical sentence he would request at resentencing.  This hypothetical sentence is well below the sentence he originally sought.  His argument, effectively, nullifies this part of the statute.  Title 18 U.S.C. § 3143(b)(1)(B)(iv) requires the court to find it is "likely" Mr. Purvis's appeal would result in a "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."  Mr. Purvis, even if he prevailed on appeal, is not likely to receive a sentence less than the 48 months' imprisonment he originally requested.

### B. The Second Prong: 18 U.S.C. § 3145(c) "Exceptional Circumstances" Requirement

As explained above, § 3145(c) permits release of a defendant subject to mandatory detention under § 3143(b)(2) pending appeal if he satisfies the requirements of § 3143(b)(1) and

10

"if it clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c). The Ninth Circuit has reasoned, in an opinion cited by our Circuit, that district courts "might . . . consider circumstances that that would render the hardships of prison unusually harsh for a particular defendant" such as "a sufficiently serious illness." *United States v. Garcia*, 340 F.3d 1013, 1019 (9th Cir. 2003) (cited in *United States v. Hosier*, 617 F. App'x 910, 913 (10th Cir. 2015)). By all accounts, Mr. Purvis has significant health problems (*see* Doc. 37 at 27 (PSR ¶¶ 103–107)), placing him at serious risk should he contract COVID-19. But exceptional circumstances under § 3145(c), alone, cannot serve as the reason for release pending appeal. Mr. Purvis has failed to sustain his burden under § 3143(b)(1), so the court cannot grant release pending appeal for exceptional circumstances under § 3145(c).

### III.   Conclusion

As explained above, § 3143(b)(2), with one exception, subjects Mr. Purvis to mandatory detention pending appeal. That exception is the "exceptional circumstances" provision of § 3145(c). This provision requires Mr. Purvis to meet with requirements of 18 U.S.C. § 3145(b)(1), and to show that "exceptional circumstances exist" under § 3145(c). Mr. Purvis fails to meet the requirements of § 3145(b)(1) because (A) his release plan falls short of showing "clear and convincing evidence" that he poses no danger to the community if released, and (B) even if he prevailed on appeal, it is unlikely that he would receive "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(B)(iv). The court thus denies Mr. Purvis's Emergency Motion for Release Pending Appeal (Doc. 90).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Emergency Motion for Release Pending Appeal (Doc. 90) is denied.

**IT IS SO ORDERED.**

**Dated this 16th day of April, 2020, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**
